UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

**DEMETRIOUS JONES,**
    **Plaintiff,**                          )
                                         )
v.                                      )        Case No. 25-3097
                                         )
**LITTLES,** *et al.*,                  )
    **Defendants.**            )

## MERIT REVIEW ORDER

Plaintiff, proceeding *pro se* and incarcerated at Western Illinois Correctional Center ("Western"), filed a Complaint under 42 U.S.C. § 1983 alleging violations of his constitutional rights. (Doc. 1). The Court must "screen" Plaintiff's Complaint, and through such process, identify and dismiss any legally insufficient claim, or the entire action if warranted. 28 U.S.C. § 1915A. A claim is legally insufficient if it "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." *Id.* In reviewing the Complaint, the Court accepts the factual allegations as true, liberally construing them in Plaintiff's favor. *See Turley v. Rednour*, 729 F.3d 645, 649 (7th Cir. 2013). Conclusory statements and labels are insufficient, however. Enough facts must be provided to "state a claim for relief that is plausible on its face." *Alexander v. United States*, 721 F.3d 418, 422 (7th Cir. 2013) (citation omitted).

### ALLEGATIONS

Plaintiff files suit against Defendant Internal Affairs Officer/Lieutenant Littles, Placement Officer Bright, Warden Brittany Greene, Western Illinois Staff, Lieutenant Formen, Sergeants Rupkin and Fugua, Correctional Officer Ford, Radecki, and Mental Health Counselors Miller and Littles.

Plaintiff alleges his cellmate, who was diagnosed as seriously mentally ill ("SMI"), exhibited "weird behavior." (Doc. 1 at p. 5). For instance, he talked to himself, paced around the cell, and made racist remarks, causing Plaintiff to feel unsafe.

On an unspecified date, Plaintiff alleges he informed Defendant Segreant Fugua about his cellmate and that he felt unsafe. Plaintiff also references Defendants Radecki and Ford, but his allegations regarding these Defendants are unclear. *Id.* at pp. 5-6.

When Plaintiff talked to Defendant Fugua for a third time on December 16, 2023, Plaintiff informed him that he felt unsafe and asked to be moved. Defendant Fugua allegedly instructed Plaintiff to either return to his cell or refuse housing. Plaintiff alleges he returned to his cell because he would have been sent to segregation if he refused his housing assignment. Plaintiff spoke with Defendant Fugua again on December 17, 2023, and asked to be moved, but Defendant advised him to refuse housing.

Beginning on January 24, 2024, Plaintiff alleges he spoke with Defendant Rupkin, the night shift segreant, about his cellmate at least four times. Defendant Rupkin advised him to speak with Defendant Formen. When Plaintiff spoke with Defendant Formen, he allegedly told Plaintiff to refuse his housing assignment and joked that Plaintiff's cellmate was Mexican, and "all Mexicans [are] racist." *Id.* at p. 7.

Plaintiff alleges he wrote a letter to Defendant Internal Affairs Officer Littles to inform him that his cellmate made him feel unsafe due to his racist remarks and unusual behavior, but Defendant Littles did not respond.

On February 14, 2024, Plaintiff's cellmate physically attacked and hit him in the face with a boiling hot pot, causing second degree burns to his face and right shoulder. His cellmate also hit

him in the left eye, causing it to swell shut. Plaintiff and his cellmate began wrestling, and during the brawl, Plaintiff's cellmate either bit his finger or cut it with a razer.

When Plaintiff's cell door opened, he showed Defendant Radecki the bloody towel wrapped around his finger. Plaintiff was cuffed and taken to the nurse. He was sent to the hospital, where he received emergency surgery on his finger and treatment for his burns. Plaintiff alleges that unidentified Western Illinois staff members failed to protect him by not checking his cell for dangerous contraband, such as "rigged up" hot pots capable of boiling water. *Id.* at p. 9.

When Plaintiff returned from the hospital, he was placed in segregation and disciplined for fighting with his cellmate. Plaintiff alleges he began feeling sad, anxious, and scared and had difficulty sleeping after the attack. Plaintiff submitted multiple requests to speak with a mental health professional. Approximately a month later, Plaintiff spoke with Defendant Littles, a mental health counselor, and informed her that he could not sleep and felt anxious and sad. Defendant Littles allegedly told Plaintiff there was nothing she could do and sent him back to his cell.

On May 10, 2024, Plaintiff met with a psychologist, Dr. Jackson, who diagnosed him with anxiety and a sleep disorder. Dr. Jackson allegedly told Plaintiff that he should be assigned to his own cell, but it was up to Defendant Placement Officer Bright. Plaintiff alleges he wrote to Defendant Bright but received no response.

Plaintiff alleges that Defendant Miller, a mental health counselor, commented that inmates who are diagnosed as SMI are assigned cellmates in order to protect them from killing or harming themselves. Plaintiff alleges this policy places their cellmates at risk.

**ANALYSIS**

To plead a claim that prison officials violated his Eighth Amendment rights by failing to protect him from an attack, Plaintiff must allege facts suggesting that the officials were deliberately

3

indifferent to his safety. *Farmer v. Brennan*, 511 U.S. 825, 834, 839-40 (1994). But because "prisons are dangerous places" and guards lack "control over crowding and other systemic circumstances," *Riccardo v. Rausch*, 375 F.3d 521, 525 (7th Cir. 2004), "failure to provide protection constitutes an Eighth Amendment violation only if deliberate indifference by prison officials to a prisoner's welfare 'effectively condones the attack by allowing it to happen.' . . . [This means that the plaintiff] had to allege facts sufficient to show 'that the defendants had actual knowledge of an impending harm easily preventable, so that a conscious, culpable refusal to prevent the harm can be inferred from the defendant's failure to prevent it.'" *Santiago v. Walls*, 599 F.3d 749, 756 (7th Cir. 2010) (quoting *Lewis v. Richards*, 107 F.3d 549, 553 (7th Cir. 1997)).

Plaintiff alleges he informed Defendants Fugua, Rupkin, and Formen about his cellmate's unusual behavior and that he felt unsafe, especially due to his racist remarks. Plaintiff asked to be moved, but Defendants advised him to refuse his housing assignment if he felt unsafe. Plaintiff alleges that refusing housing would result in segregation time and the loss of privileges. Plaintiff alleges that his cellmate physically attacked him on February 14, 2024, causing serious burns and injuries. The Court finds that Plaintiff's allegations against Defendants Fugua, Rupkin, and Formen are sufficient to proceed on an Eighth Amendment failure-to-protect claim.

While Plaintiff may have also personally informed Defendants Radecki and Ford about his cellmate's behavior, his allegations are difficult to discern and do not give Defendants sufficient notice of the claims. (*See* Doc. 1 at pp. 5-6). Federal Rule of Civil Procedure 8(a)(2) requires Plaintiff to submit a short and plain statement of the claim showing that the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(2). The Seventh Circuit has consistently noted that the essential function of a complaint under the civil rules...is to put the defendant on notice of the plaintiff's claim. *Ross Bros. Const. Co. v. Int'l Steel Servs., Inc.*, 283 F.3d 867, 872 (7th Cir. 2002) (quoting *Davis v.*

*Ruby Foods, Inc.*, 269 F.3d 818, 820 (7th Cir. 2001)). While it is not necessary for a plaintiff to plead specific facts, *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007), "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2007) (citing *Twombly*, 550 U.S. at 555) (observing that courts "are not bound to accept as true a legal conclusion couched as a factual allegation"). Defendants Radecki and Ford are dismissed without prejudice.

Plaintiff asserts that Defendant Littles, a Mental Health Counselor, refused to provide him with any mental health treatment when he allegedly informed her that he could not sleep and felt anxious and sad after the attack. It is well established that deliberate indifference to a serious medical need is actionable as a violation of the Eighth Amendment. *Hayes v. Snyder*, 546 F.3d 516, 522 (7th Cir. 2008). A claim of deliberate indifference contains both an objective and a subjective component. Farmer, 511 U.S. at 834. To satisfy the objective component, a prisoner must demonstrate that his medical condition is "objectively, sufficiently serious." *Id*. An objectively serious medical condition is one that "has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would perceive the need for a doctor's attention." *Hayes*, 546 F.3d at 522. To satisfy the subjective component, the inmate must demonstrate that the prison official acted with a "sufficiently culpable state of mind." *Farmer*, 511 U.S. at 834. The official must know of and disregard an excessive risk to the inmate's health; "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id*. at 837. The prisoner must show that the defendant engaged in more than negligence and that the defendant's conduct approached intentional wrongdoing or criminal recklessness. *Holloway v. Delaware Cnty. Sheriff*, 700 F.3d 1063, 1073 (7th Cir. 2012) (citing *Farmer*, 511 U.S. at 837). The Court finds that

Plaintiff's allegations raise a plausible Eighth Amendment deliberate indifference claim against Defendant Littles based on her alleged refusal to provide any mental health treatment.

Plaintiff contends that unidentified staff members at Western failed to conduct required cell checks to look for contraband, such as "rigged up" hot pots capable of boiling water. Plaintiff does not allege that staff members knew or had reason to know that his cellmate had modified a hot pot and were deliberately indifferent to that fact. Defendant "Western Illinois Staff" is dismissed without prejudice.

Plaintiff alleges he wrote a letter to Defendant Littles, an Internal Affairs Officer, but did not receive a response. Simply receiving correspondence from a prisoner does not make a prison official liable for the alleged constitutional violation. *Norington v. Daniels*, No. 11- 282, 2011 WL 5101943, at *3 (N.D. Ind. Oct. 25, 2011); *see also Diaz v. McBride*, No. 93-176, 1994 WL 750707, at *4 (N.D. Ind. Nov. 30, 1994) (plaintiff cannot establish personal involvement and subject a prison official to liability under § 1983, merely by sending the official various letters or grievances complaining about the actions or conduct of subordinates). Defendant Littles is dismissed without prejudice.

Plaintiff names Warden Greene as a Defendant, but he does not include any specific allegations against her in his Complaint. Defendant Greene cannot be held liable merely due to her supervisory position, as the doctrine of *respondeat superior* (supervisor liability) does not apply to actions filed under Section 1983. *Pacelli v. DeVito*, 972 F.2d 871, 877 (7th Cir. 1992). Plaintiff also names Placement Officer Bright and Mental Health Counselor Miller as Defendants, but his threadbare allegations against these Defendants are insufficient to state a claim. Defendants Greene, Bright, and Miller are dismissed without prejudice.

**IT IS THEREFORE ORDERED:**

1) According to the Court's merit review of Plaintiff's Complaint under 28 U.S.C. § 1915A, this case shall proceed on (1) an Eighth Amendment failure-to-protect claim against Defendants Fugua, Rupkin, and Formen, and (2) an Eighth Amendment claim against Defendant Littles (Mental Health Counselor) based on her alleged deliberate indifference to Plaintiff's mental health needs. Additional claims shall not be included in the case above, except in the Court's discretion on motion by a party for good cause shown under Federal Rule of Civil Procedure 15.

2) Defendants Littles (Internal Affairs Officer/Lieutenant), Bright, Brittany P. Greene, Western Illinois Staff, Ford, Radecki, and Miller are DISMISSED WITHOUT PREJUDICE for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) and § 1915A. The Clerk is directed to TERMINATE these Defendants. Plaintiff is given leave to file an Amended Complaint within 30 days of this Order. Plaintiff's Amended Complaint will replace his Complaint in its entirety and must contain all allegations against all Defendants. Piecemeal amendments are not accepted.

3) This case is now in the process of service. The Court advises Plaintiff to wait until counsel has appeared for Defendants before filing any motions to give Defendants notice and an opportunity to respond to those motions. Motions filed before Defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at this time unless otherwise directed by the Court.

4) The Court will attempt service on Defendants by mailing a waiver of service. If Defendants fail to sign and return a waiver of service to the Clerk within 30 days after the waiver is sent, the Court will take appropriate steps to effect formal service through the U.S. Marshals

Service on Defendants and will require Defendants to pay the full costs of formal service pursuant to Federal Rule of Civil Procedure 4(d)(2).

5) Defendants shall file an answer within 60 days of the date the Clerk sends the waiver of service. A motion to dismiss is not an answer. The answer should include all defenses appropriate under the Federal Rules. The answer and subsequent pleadings shall be to the issues and claims stated in this Order. In general, an answer sets forth Defendants' positions. The Court does not rule on the merits of those positions unless and until Defendants file a motion. Therefore, no response to the answer is necessary or will be considered. If Defendants have not filed an answer or appeared through counsel within 90 days of the entry of this Order, Plaintiff may file a motion requesting the status of service. After Defendants have been served, the Court will enter a scheduling order setting discovery and dispositive motion deadlines.

6) If Defendants no longer work at the address Plaintiff provided, the entity for whom Defendants worked while at that address shall submit to the Clerk Defendants' current work address, or, if not known, Defendants' forwarding address. This information shall be used only for effectuating service. Documentation of Defendants' forwarding address shall be retained only by the Clerk and shall not be maintained in the public docket nor disclosed by the Clerk.

7) This District uses electronic filing, which means that after Defendants' counsel has filed an appearance, Defendants' counsel will automatically receive electronic notice of any motion or other paper filed by Plaintiff with the Clerk. Plaintiff does not need to mail to Defendants' counsel copies of motions and other documents that Plaintiff has filed with the Clerk. However, this does not apply to discovery requests and responses. Discovery requests and responses are not filed with the Clerk. Plaintiff must mail his discovery requests and responses directly to Defendants' counsel. Discovery requests or responses sent to the Clerk will be returned

unfiled unless they are attached to and the subject of a motion to compel. Discovery does not begin until Defendants' counsel has filed an appearance and the Court has entered a scheduling order, which will explain the discovery process in more detail.

8) Defendants' counsel is hereby granted leave to depose Plaintiff at Plaintiff's place of confinement. Defendants' counsel shall arrange the time for the deposition.

9) Plaintiff shall immediately inform the Court, in writing, of any change in his mailing address and telephone number. Plaintiff's failure to notify the Court of a change in mailing address or phone number will result in dismissal of this lawsuit, with prejudice.

10) Plaintiff shall be provided a copy of all pertinent medical records upon request.

11) Within 10 days of receiving from defense counsel an authorization to release medical records, Plaintiff is directed to sign and return the authorization to Defendants' counsel. The Clerk is directed to enter the standard qualified protective order pursuant to the Health Insurance Portability and Accountability Act.

12) The Clerk is directed to set an internal court deadline 60 days from the entry of this Order for the Court to check on the status of service and enter scheduling deadlines.

ENTERED:  June 2, 2025

s/ Michael M. Mihm  
Michael M. Mihm  
United States District Judge